Filed 1/6/22  P. v. Rios CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B310532 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA109070) |
| v. | |
| JUAN PABLO RIOS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, George C. Lomeli, Judge.  Reversed and remanded with directions.

Judith Kahn, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Charles S. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

In 1997, a jury convicted appellant Juan Rios and several co-defendants of two counts of first degree murder, two counts of robbery, and found true the special circumstance allegation that the murders were committed during the commission of a robbery. We affirmed these convictions in 1998 in our prior, unpublished opinion, *People v. Martinez* (Nov. 12, 1998, B113156) [nonpub. opn.] (*Martinez*).[1]  In 2019, appellant filed his first petition for resentencing under Penal Code section 1170.95.[2]  The superior court denied the petition, finding that appellant was ineligible for relief as a matter of law because the jury's true finding on the special circumstance allegation included a finding that appellant was a major participant in the underlying robbery who acted with reckless indifference to human life.  Appellant filed his second petition for resentencing in 2020.  The superior court appointed counsel for appellant and the parties submitted briefing.  The court denied the petition, again relying on the jury's special circumstance finding.

Appellant asserts that the court erred in relying on the jury's special circumstance finding, which predated the Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).  Those decisions clarified the law regarding major participants in an underlying offense who act with reckless indifference to life.  Instead, appellant urges us to follow the reasoning in a line of cases including *People v. Torres* (2020) 46 Cal.App.5th 1168,

---

[1] We grant appellant's unopposed request to take judicial notice of the record that was before us in the prior appeal.

[2] All further section references are to the Penal Code unless otherwise indicated.

1173, review granted June 24, 2020, S262011 (*Torres*), which held that a superior court commits reversible error by summarily denying a section 1170.95 petition based on a robbery-murder special circumstance finding that predates *Banks* and *Clark*. Respondent Attorney General cites a line of cases disagreeing with *Torres*, and urges us to affirm the superior court's ruling. Alternatively, respondent contends that we may conduct an independent analysis of the evidence under *Banks* and *Clark*, from which we should conclude that any error was harmless.

As we have in our prior decisions on the issue, we adopt the reasoning of *Torres* and similar cases and therefore conclude that the superior court erred in finding relief was precluded as a matter of law by the jury's pre-*Banks* and *Clark* special circumstance finding. We also decline respondent's invitation to find the error harmless by factually determining whether appellant was a major participant who acted with reckless indifference under the standards established by *Banks* and *Clark*. Because nothing in the record of conviction established appellant's ineligibility as a matter of law, we reverse the order summarily denying appellant's petition, and direct the court to issue an order to show cause and proceed consistent with section 1170.95, subdivision (d).

## BACKGROUND

### I. *Factual Background*

The underlying facts presented at trial are discussed in detail in our prior opinion, *Martinez, supra*, B113156. We summarize them here as relevant to the instant appeal.

Appellant and co-defendants Javier Martinez, Marvin Zarceno, and Jose Gomez were members of the Crazy Riders gang. On November 4, 1995, Edith Luz Pena and her husband

3

Reynaldo Lopez were working in their clothing store. Zarceno entered the store, pushing Richard Startz, another Crazy Rider, in a wheelchair. Pena, a former member of the Crazy Rider gang, recognized both men as Crazy Riders. Startz asked to see some clothing, and Pena placed several items of clothing on his knees.

Startz threw some of the clothes on the sidewalk. When Lopez told Startz he would have to pay for the clothing, Startz lifted his shirt, displaying a silver semiautomatic gun. Lopez tried to take the clothing that remained on Startz's knees, but both Zarceno and Startz resisted. Zarceno tried to hit Lopez. Zarceno left the store to call his "homeboy[s]," and Startz told Lopez he would kill him.

Zarceno returned to the store with appellant, Martinez, Gomez, and several other Crazy Riders, including two men identified only as "El Guero," and "Little Mister." Martinez pushed Pena, and appellant pushed and kicked her. El Guero went behind the counter and disconnected the telephone. He also rummaged through Pena's purse; she later discovered that he had taken $700 from her purse.

While inside the store, Martinez asked Little Mister for his gun. Martinez held the gun directly in front of Lopez's forehead and hit Lopez in the mouth. Martinez said, "I'm going to kill you." He then hit Lopez a second time and repeated, "I'm going to kill you. . . . Here the Crazy Riders are in charge. [¶] This is our barrio." El Guero told Martinez to kill Lopez. Lopez asked Pena to call the police, but several Crazy Riders held her back. Both Lopez and Pena testified that several gang members, including appellant, grabbed and held Pena.

Martinez returned the gun to Little Mister saying, "Do what you have to do. Do it for the barrio." At that point, Lopez's

4

brother, Joel Hernandez, entered the store and asked what was happening. El Guero told Little Mister to kill him. Appellant, El Lobo, and Startz each said, "Kill him. Kill him." Appellant also said that the neighborhood was a Crazy Rider neighborhood and had to be respected.

Little Mister shot Hernandez three or four times. Hernandez died as a result of the gunshot wounds. The Crazy Riders holding Pena released her.

The Crazy Riders ran out of the store. Martinez was one of the last to leave and again asked Little Mister for the gun. Outside the store, Martinez shot and killed Stanley Drury, a bystander who had been watching what was happening.

At trial, Officer Josh Adler, a gang expert, testified that the Crazy Riders controlled their neighborhood, or barrio, through their numbers. According to him, the gang and its members strived to gain respect through fear and intimidation, which was generated by robbing and assaulting neighborhood residents. Adler testified that if a gang member felt disrespected, the gang might return and "payback" the offender or retaliate, including through assault, robbery, threats, and intimidation. He also testified that he believed a gang member who was present at a shooting was an active participant in the crime.

## II. *Procedural History*

### A. *Trial and Direct Appeal*

Appellant, Gomez, Zarceno, and Martinez were tried on two counts of murder for killing Hernandez and Drury (§ 187, subd. (a)), and two counts of robbery for taking property from Pena and

Lopez (§ 211).[3]  The charges included special circumstance allegations that the murders occurred while the defendants were engaged in a robbery within the meaning of section 190.2, subdivision (a)(17) and that the defendants committed more than one murder within the meaning of section 190.2, subdivision (a)(3), as well as enhancement allegations that Martinez personally used a firearm (§§1203.06, subd. (a)(1), 12022.5, subd. (a)) and that a principal was armed with a firearm (§ 12022, subd. (a)(1)).

In 1997, the jury convicted appellant, Gomez, Zarceno, and Martinez of both counts of first degree murder and both counts of second degree robbery.  As to both murders, the jury found true the allegation that a principal was armed with a firearm, as well as the special circumstance allegations that the murders were committed during the commission of a robbery (§ 190.2, subd. (a)(17) and that the defendants were guilty of more than one count of murder (§ 190.2, subd. (a)(3)).  The trial court sentenced appellant to two concurrent terms of life imprisonment without the possibility of parole for the murders, plus one year for the firearm enhancement, as well as two concurrent three-year terms for the robberies.

Appellant and his co-defendants appealed their convictions.  In our prior opinion, we affirmed appellant's convictions.  We found sufficient evidence for the jury to conclude that appellant and the other Crazy Riders accompanied Zarceno back to the store with the intent to commit a robbery, and that the murders

---

[3] A fifth count for conspiracy was dismissed during trial. The court also granted a section 1118.1 motion as to Escobar, dismissing all counts against him.

were committed during the perpetration of that robbery. (*Martinez, supra,* B113156.)

Appellant also argued that there was insufficient evidence to support the special circumstance finding that he was a major participant in the robbery and acted with reckless indifference to human life. We disagreed, finding that appellant "played a major role in the underlying robbery," by enabling the robbery to occur. We noted the evidence that appellant physically restrained Pena, preventing her from stopping El Guero as he rummaged through her purse and extracted the money, and also that appellant prevented Pena from calling the police, which "helped ensure the success of the robbery and the murder." Appellant also "ordered Little Mister to 'kill him,' and . . . reiterated Martinez's statement that the Crazy Riders deserved respect in the neighborhood," then failed to aid Hernandez after he was shot. (*Ibid*.) As such, we concluded that appellant "facilitated the robbery and specifically urged a killing, thereby demonstrating [he was a] major participant[ ] in the robbery and, at a minimum, demonstrated a reckless indifference to human life." (*Ibid*.) We therefore found that there was sufficient evidence to sustain appellant's conviction for the special circumstance murder of Hernandez as an aider and abettor. (*Martinez, supra,* B113156, at 23-*24*.)

With respect to Drury's murder, we noted that appellant, Gomez, and Zarceno "persuasively argue the evidence is insufficient to convict them of Mr. Drury's killing based on aiding and abetting a premeditated and deliberate killing." In particular, we cited the evidence that appellant "may already have left the scene prior to the killing since Martinez was one of the last to leave. But, in finding the special circumstance of

7

robbery-murder true as to the appellants, the jury concomitantly found the elements of felony murder to be true.  Because the jury relied on a proper theory to support appellants' convictions, reversal is not warranted." (*Martinez, supra,* B113156.)

**B.** *First Petition for Resentencing*

On March 6, 2019, appellant filed a petition for resentencing under section 1170.95.  On the form petition, he checked the boxes asserting that he was convicted of first degree felony murder, could not now be convicted of murder because of changes to section 189, and that there had "been a prior determination by a court or jury that I was not a major participant and/or did not act with reckless indifference to human life," so that he was entitled to be resentenced pursuant to section 1170.95, subdivision (d)(2).  Appellant also checked the box requesting the appointment of counsel.

The court denied the petition on March 29, 2019.  In summarizing the evidence, the court noted that appellant "was one of the individuals who returned with the other gang members one of which was armed with a firearm.  While at the location, [appellant] was also one of the individuals that grabbed one of the owners, a Miss Pena, and also was one of the members who directly encouraged another member, Mr. Romero, to shoot victim Hernandez.  [Appellant] was not only present during the shooting of victims Hernandez and Drury, but also was responsible for physically harassing the owners, was privy to the threats being made on their lives and responsible for running off without attempting to render aid to the victims after the shootings."  The court found "based upon the totality of the evidence presented at trial and the overall court record that the petitioner was indeed a major participant who acted with reckless indifference."

Accordingly, the court denied appellant's petition, finding that he was ineligible for relief under section 1170.95.

## C.    *Petition for Habeas Corpus*

Appellant filed a petition for writ of habeas corpus on April 23, 2019.  He argued that there was insufficient evidence to support the special circumstances finding that he exhibited reckless indifference to human life (section 190.2, subdivision (d)) pursuant to the standards set forth in *Banks* and *Clark*.  More specifically, he contended that he arrived at the scene after the victims were killed, he never told or encouraged anyone to kill the victims, did not provide any weapons to the perpetrator(s), and claimed he had been framed by a police detective.  Appellant also argued that his petition for resentencing under section 1170.95 should have been granted because he was neither the actual killer nor a major participant.

The court denied appellant's habeas petition in a one-page written order dated May 15, 2019.  The court found that appellant failed to establish a prima facie case for relief and that the record was "void of any evidence and/or information which supports the Petitioner's contention raised in his present petition regarding the insufficiency of evidence and/or the introduction of false evidence."  The court also cited its prior order denying appellant's petition for resentencing.

## D.    *Second Petition for Resentencing*

Appellant filed a second petition for resentencing under section 1170.95 on September 16, 2020.  He again checked the boxes indicating that he had been convicted of first degree felony murder but could not now be convicted because he was not the actual killer, did not directly aid or abet the killer, and was not a major participant.

The court ordered the appointment of counsel for appellant. The People filed a response to the petition, arguing that the second petition did not contain any additional facts or authorities that would compel the court to reverse its prior finding that appellant was not entitled to relief. Specifically, the prosecution argued that in finding true the felony murder special circumstances, the jury "found either that Petitioner was: (1) the actual killer; (2) an aider and abettor who harbored the intent to kill; or (3) a major participant in the . . . robbery who acted with reckless indifference to human life." Thus, the prosecution contended that appellant could still be convicted of murder and was ineligible for relief as a matter of law.[4]

Appellant, through his appointed counsel, filed a reply on January 8, 2021. He argued that he was eligible for relief because he was not the actual killer, and under the *Banks/Clark* standard, he was not a major participant in the underlying felony and did not act with reckless indifference to human life.

At a hearing on January 25, 2021, the court reviewed the facts "as reflected by the evidence." The court noted that "the

_____

[4] At the hearing on the petition, the prosecutor informed the court that under the new directive issued by the new District Attorney, the prosecution was no longer arguing that a petitioner was ineligible for relief as a matter of law based on a pre-*Banks* and *Clark* special circumstances finding. The court indicated it would grant a continuance if she wished to cite additional authority, but not to "explore with your office what steps should be taken based on the new directive or policy and the manner that you're going to address the 1170.95 petition. If that is the only thing, the court will allow the ruling to stand today." The prosecutor declined the continuance and the court stated that its ruling denying the petition would stand.

evidence reflects that the petitioner . . . was one of the individuals who returned with the other gang members, one of which was armed with a firearm. [¶] While at the location, the petitioner was also one of the individuals who grabbed one of the owners, Ms. Pena, and also one who directly encouraged another member to shoot . . . victim Hernandez. . . . [¶] The petitioner was not only present during the shooting of the victims, Mr. Hernandez and Mr. Drury, but was responsible for restraining one of the victims while physically harassing the owner. [¶] Moreover, he was privy to the threats . . . being made to the victims' lives and responsible for running off without attempting to render aid after the shootings." The court rejected appellant's argument that he did not act as a major participant with reckless indifference to human life, explaining that: "based upon the fact that the jury, in finding true the special circumstance allegation pursuant to Penal Code Section 190.2(a)(17), it was necessary for the jury to have found beyond a reasonable doubt that the petitioner acted with reckless indifference to human life and was a major participant who aided and abetted, counseled, induced, or assisted in the commission of the crimes of robbery which resulted in the deaths in question." The court further found that the amendment to section 189, subdivision (e) "effectively made the crime of felony murder subject to the same requirements as special circumstance murder committed during the course of a felony listed in section 190.2(a)(17)," and concluded that "the case law and factors outlined in the cases of *People v. Banks*, [*supra*,] and *People v. Clark*, [*supra*,] make it clear that the petitioner is ineligible for relief." The court therefore denied appellant's petition.

11

## DISCUSSION

Appellant asserts that the superior court prejudicially erred in denying his section 1170.95 petition at the prima facie stage, in reliance on the jury's robbery-murder special circumstance finding.  Because the jury's special circumstance finding was made prior to *Banks, supra*, 61 Cal.4th 788 and *Clark, supra*, 63 Cal.4th 522, appellant contends it does not preclude relief under section 1170.95 as a matter of law.  We agree.

### I.    *Governing Law*

"In 2018, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.)  (Senate Bill 1437) after determining that there was further 'need for statutory changes to more equitably sentence offenders in accordance with their involvement in homicides.' (Stats. 2018, ch. 1015, § l, subd. (b).)"  (*People v. Gentile* (2020) 10 Cal.5th 830, 838-839 (*Gentile*).)  These changes included the amendment of section 189 to provide that a participant in qualifying felonies during which a death occurs generally will not be liable for murder unless the participant was (1) "the actual killer," (2) a direct aider and abettor in first degree murder with the intent to kill, or (3) "a major participant in the underlying felony [who] acted with reckless indifference to human life."  (§ 189, subd. (e).)

Senate Bill 1437 also added section 1170.95, which provides a procedure for individuals convicted of murder under the felony murder rule or the natural and probable consequences doctrine to have their murder convictions vacated and to be resentenced on any remaining counts.  (*Gentile, supra*, 10 Cal.5th at p. 843; § 1170.95, subd. (a).)  The first step in the section 1170.95 procedure is for the person seeking resentencing to file a

12

petition with a declaration asserting that all of the following conditions apply: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of trial at which the petitioner could be convicted for first degree or second degree murder. [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subds. (a), (b)(1)(A).)

"Where the petition complies with subdivision (b)'s three requirements, then the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief. (§ 1170.95, subd. (c).)" (*People v. Lewis* (2021) 11 Cal.5th 952, 960 (*Lewis*).) "[T]he 'prima facie bar was intentionally and correctly set very low.'" (*Lewis, supra*, 11 Cal.5th at p. 972.) "[A]t the prima facie stage, a petitioner's allegations should be accepted as true, and the court should not make credibility determinations or engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Id*. at p. 974, quoting *People v. Drayton* (2020) 47 Cal.App.5th 965, 980 (*Drayton*).) The court may, however, review the record of conviction for "readily ascertainable facts" that refute the allegations made in the petition. (*Drayton, supra*, 47 Cal.App.5th at p. 980; *Lewis, supra*, 11 Cal.5th at p. 971.)

Denial of a petition under section 1170.95 at the prima facie stage "is appropriate only if the record of conviction demonstrates that 'the petitioner is ineligible for relief as a matter of law.' [Citations.] This is a purely legal conclusion,

13

which we review de novo." (*People. v. Murillo* (2020) 54 Cal.App.5th 160, 167-168, review granted Nov. 18, 2020, S264978; see also *People v. Turner* (2020) 45 Cal.App.5th 428, 435.)

If the court determines that the petitioner has made a prima facie showing for relief, it must issue an order to show cause. (§ 1170.95, subd. (c).) The court must then hold an evidentiary hearing to determine whether to vacate the murder conviction (§ 1170.95, subd. (d)(1)), at which "[t]he prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens" (§ 1170.95, subd. (d)(3)). At the hearing stage, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3).)[5]

---

[5] After this appeal was fully briefed, the Governor approved Senate Bill No. 775 (2021-2022 Reg. Sess.), effective January 1, 2022. (See Stats. 2021, ch. 551; Cal. Const., art. IV, § 8, subd. (c)(2).) This bill amends section 1170.95 to provide that that "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." The bill also deletes the language in section 1170.95 authorizing the parties to rely on the "record of conviction" and adds a statement that the court may consider "the procedural history of the case recited in any prior appellate opinion." (*Ibid*.) Given our conclusion that the superior court committed reversible error under the law predating these amendments, we need not consider their potential relevance.

**II.**   *Analysis*
   **A.**   *Forfeiture*

As an initial matter, respondent contends that appellant's second section 1170.95 petition filed in 2020 is procedurally barred as a "successive petition." Respondent contends that appellant's first petition, filed in 2019, was denied on the merits and that the 2020 petition raised the same claims. Thus, respondent urges us to find that the petition at issue here is barred by collateral estoppel.

Appellant counters that respondent failed to raise the issue of collateral estoppel in the trial court and has therefore forfeited the objection. We agree. Although the prosecution noted below that appellant's second petition alleged the same facts as his first petition, it did not argue in its briefing or at the hearing before the superior court that appellant's 2020 petition was barred by collateral estoppel. Consequently, neither appellant nor the superior court had the opportunity to address the issue, and the court did not rule on it in denying the petition. We therefore conclude that respondent has forfeited the ability to raise collateral estoppel for the first time on appeal. (See *People v. Morales* (2003) 112 Cal.App.4th 1176, 1185 ["collateral estoppel is waived if not raised in the trial court"]; *People v. Neely* (1999) 70 Cal.App.4th 767, 782–783.)[6]

   **B.**   ***Appellant Was Not Ineligible for Relief as a Matter of Law***

Turning to the merits of the appeal, appellant argues that the superior court erred in denying his section 1170.95 petition at

---

[6] We need not reach appellant's additional argument that respondent forfeited this issue by invited error.

15

the prima facie stage.  The court concluded that the jury's special circumstance finding established as a matter of law that appellant was a major participant in the underlying felony and acted with reckless indifference to human life, thus he was ineligible for relief.  We conclude that this was error.

The robbery-murder special circumstance allegation required the jury to find that appellant was a "major participant" in the robbery and acted with "reckless indifference" to human life. (§ 190.2, subd. (d).)  The language of section 189, subdivision (e)(3), as amended by Senate Bill 1437, tracks the language of the special circumstance provision, providing that a participant in the perpetration of a qualifying felony (here, a robbery) in which a death occurs is liable for murder if it is proven that "[t]he person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

Respondent contends the requirements for a special circumstance finding under section 190.2 are identical to the requirements for felony murder under section 189 and we should therefore rely on the jury's special circumstance finding to establish that appellant could still be convicted for murder under section 189 and is ineligible for relief as a matter of law. However, in *Banks, supra*, 61 Cal.4th 788 and *Clark, supra*, 63 Cal.4th 522, our Supreme Court "clarified the meaning of the special circumstances statute."  (*In re Scoggins* (2020) 9 Cal.5th 667, 674.) In *Banks*, the court considered the circumstances under which an accomplice qualifies as a "major participant" in a felony murder.  (*Banks, supra*, 61 Cal.4th at p. 794.)  The court set out factors that "may be weighed in determining the ultimate question, whether the defendant's participation 'in criminal

16

activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major.'" (*Id.* at p. 803.) Cautioning that no one factor was "necessary" or "necessarily sufficient," the court identified the following factors: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Ibid.*) The following year, the Supreme Court stated in *Clark* that "reckless indifference" "encompasses both subjective and objective elements. The subjective element is the defendant's conscious disregard of risks known to him or her. . . . [R]ecklessness is also determined by an objective standard, namely what 'a law-abiding person would observe in the actor's situation.'" (*Clark, supra*, 63 Cal.4th at p. 617.)

We recognize that courts are split on how to treat the changes to the standard articulated in *Banks* and *Clark* in the context of a section 1170.95 petition. (Compare*, e.g., People v. York* (2020) 54 Cal.App.5th 250, 258, review granted Nov. 18, 2020, S264954 ["a pre-*Banks* and *Clark* special circumstance finding cannot preclude eligibility for relief under the section 1170.95 as a matter of law"]; *People v. Harris* (2021) 60 Cal.App.5th 939, 957, review granted Apr. 28, 2021, S267802 (*Harris*) [a "pre-*Banks/Clark* finding, without more, does not preclude relief under section 1170.95"]; with *People v. Gomez*

17

(2020) 52 Cal.App.5th 1, 17, review granted Oct. 14, 2020, S264033 ["the proper procedure for [Gomez] to challenge her special circumstance findings based on clarification of the relevant law in *Banks* and *Clark* is to bring a petition for habeas corpus"]; *People v. Nunez* (2020) 57 Cal.App.5th 78, 93, review granted Jan. 13, 2021, S265918 ["whether a jury made a post- or pre-*Banks* and *Clark* MPRI finding, that finding establishes as a matter of law the defendant's ineligibility for relief under section 1170.95"].)  The issue is currently pending before our Supreme Court.[7]

As we have in prior cases, we continue to find more persuasive the reasoning set forth in *Torres, supra*, 46 Cal.App.5th 1168.  In *Torres*, our colleagues in Division Five of this district explained:  "[O]ur Supreme Court's decisions, clarifying what it means . . . to be a 'major participant' in an underlying felony and to act with 'reckless indifference to human life,' construed section 190.2, subdivision (d) in a significantly different, and narrower manner than courts had previously construed the statute."  (*Torres, supra*, 46 Cal.App.5th at p. 1179.)  Thus, when determining if appellant "could be convicted today of first degree murder, we cannot simply defer to the jury's pre-*Banks* and *Clark* factual findings that [he] was a major participant who acted with reckless indifference to human life as

---

[7] The Supreme Court has granted review in *People v. Strong* (Dec. 18, 2020, C091162) [nonpub. opn.], review granted March 10, 2021, S266606, to resolve the following issue:  "Does a felony-murder special circumstance finding (Pen. Code, § 190.2, subd. (a)(17)) made before [*Banks*] and [*Clark*] preclude a defendant from making a prima facie showing of eligibility for relief under Penal Code section 1170.95?"

18

those terms were interpreted at the time." (*Ibid.*) Accordingly, the court held that "the trial court erred in ruling that the pre-*Banks* and *Clark* robbery murder special circumstance findings preclude Torres from relief as a matter of law." (*Id.* at p. 1180.)

The Attorney General asserts that *Torres* was wrongly decided, and urges us to follow instead the reasoning of *People v. Galvan* (2020) 52 Cal.App.5th 1134, review granted October 14, 2020, S264284 (*Galvan*), and similar cases. In *Galvan*, Division One of this district held that the "requirements for the felony-murder special circumstance did not change as a part of Senate Bill No. 1437, and are identical to the new requirements for felony murder following the enactment of Senate Bill No. 1437. . . . By finding a special circumstance allegation true, the jury makes precisely the same finding it must make in order to convict a defendant of felony murder under the new law. Because a defendant with a felony-murder special circumstance could still be convicted of murder, he is ineligible as a matter of law to have his murder conviction vacated. (See § 1170.95, subd. (a)(3).)" (*Id.* at pp. 1140-1141.) The court also held that if a convicted defendant were "entitled to relief based on *Banks* and *Clark*, the avenue for such relief is not section 1170.95, but a petition for writ of habeas corpus." (*Id.* at p. 1142.)

Mindful of the conflicts in the law, we continue to follow the *Torres* line of cases. Thus, we conclude that the jury's special circumstances finding, made prior to *Banks* and *Clark,* "cannot preclude eligibility for relief under . . . section 1170.95 as a matter of law, because the factual issues that the jury was asked to resolve in a trial that occurred before *Banks* and *Clark* were decided are not the same factual issues our Supreme Court has since identified as controlling." (*People v. York, supra*, 54

19

Cal.App.5th at p. 258; see also, e.g., *Torres, supra*, 46 Cal.App.5th at p. 1179.)

Alternatively, respondent asserts that even if we follow *Torres*, we should nevertheless examine the record of conviction to find appellant was a major participant in the robbery who acted in reckless disregard of life even under the standards articulated in *Banks* and *Clark*, and therefore find that he remains ineligible for relief as a matter of law. (See *People v. Law* (2020) 48 Cal.App.5th 811, 826, review granted July 8, 2020, S262490; *Murillo, supra*, 54 Cal.App.5th at p. 169.) We disagree. The record does not establish as a matter of law that appellant acted with reckless indifference as a major participant during the robbery in accordance with standards established by *Banks* and *Clark*.

As our Supreme Court recently discussed in *Lewis*, "the prima facie inquiry under [section 1170.95,] subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, "'the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause.'"" (*Lewis, supra*, 11 Cal. 5th at p. 971, quoting *Drayton, supra*, 47 Cal.App.5th at p. 978; Cal. Rules of Court, rule 4.551(c)(1)).)[8] "[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing." (*Lewis, supra*, 11 Cal. 5th at p. 971,

---

[8] Appellant's opening brief was filed prior to the issuance of *Lewis*. We therefore granted his request to submit a supplemental opening brief addressing that authority.

20

quoting *Drayton, supra*, 47 Cal.App.5th at p. 978, fn. omitted.) However, if the record of conviction "'contain[s] facts refuting the allegations made in the petition,' then 'the court is justified in making a credibility determination adverse to the petitioner.'" (*Ibid.*, quoting *Drayton*, at p. 979.)

The *Lewis* court further cautioned that while prior appellate opinions "are generally considered to be part of the record of conviction," "the probative value of an appellate opinion is case-specific, and 'it is certainly correct that an appellate opinion might not supply all answers.'" (*Lewis, supra*, 11 Cal. 5th at p. 972, quoting *People v. Woodell* (1998) 17 Cal.4th 448, 457.) Thus, in reviewing the record "at this preliminary juncture," a court should not engage in "'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis, supra*, 11 Cal. 5th at p. 972, quoting *Drayton, supra*, 47 Cal.App.5th at p. 980.)

Here, appellant alleged that he was eligible for relief under section 1170.95 because he was convicted of first degree felony murder and he could not be now convicted of that crime because he: (1) was not the actual killer, (2) did not aid and abet the murder; and (3) was not a major participant in the underlying robbery and did not act with reckless indifference to human life. In this de novo review, under the test for prima facie evidence, we must accept appellant's allegations as true. (See *Lewis, supra*, 11 Cal.5th at p. 971.)

In order to rebut those allegations, respondent highlights facts in the record that could establish that appellant was indeed a major participant who acted with reckless indifference under *Banks* and *Clark*. But an analysis of the factual record to that degree goes beyond the limited scope of inquiry into "readily ascertainable facts" permissible at the prima facie stage. (See *In*

21

*re Scoggins, supra*, 9 Cal.5th at p. 683 ["[d]etermining a defendant's culpability under the special circumstances statute requires a fact-intensive, individualized inquiry"]; *Drayton, supra*, 47 Cal.App.5th at p. 980 [an example of prohibited factfinding is "determining whether the petitioner showed reckless indifference to human life in the commission of the crime"].)

Nor can we take our recitation of the facts in our prior opinion, in which we analyzed the evidence for the purpose of determining its sufficiency to support the convictions, as establishing that appellant is ineligible for relief as a matter of law. Notably, respondent acknowledges some of the factual disputes at trial, including whether appellant was present when Drury was shot or knew that this shooting had occurred. At this stage, we cannot engage in factfinding, the weighing of evidence, or the exercise of discretion to determine whether a petitioner was a major participant who acted with reckless indifference to human life. That determination must be made following an evidentiary hearing pursuant to section 1170.95, subdivision (d), where appellant has the opportunity to further develop the factual record.

We also reject respondent's contention that appellant's section 1170.95 petition is barred by the superior court's denial of his habeas corpus petition. As appellant points out, the superior court denied the habeas petition summarily (without issuing an order to show cause). Thus, its ruling will not have preclusive effect in future proceedings. (See *Torres, supra*, 46 Cal.App.5th at p. 1180, fn. 4.) Moreover, the habeas petition did not litigate the identical issue to that now raised by appellant. (See *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 825 [issue

preclusion applies only where "identical" issue was actually litigated and necessarily decided in prior proceeding].)

Appellant's habeas petition, like his direct appeal before it, raised the issue of whether the jury's special circumstance finding was supported by substantial evidence in the trial record. (See *In re McDowell* (2020) 55 Cal.App.5th 999, 1008 [*Banks/Clark* habeas claim was subject to "deferential" review of record for substantial evidence].)  In contrast, appellant's section 1170.95 petition seeks relief from his murder conviction, and requires the prosecution to prove beyond a reasonable doubt that he is guilty under a still-valid theory, taking into account any new evidence admitted at the evidentiary hearing.  (See *People v. Gonzalez* (2021) 65 Cal.App.5th 420, 434 [rejecting claim that section 1170.95 petition barred by prior habeas petition, finding that section 1170.95 was "clearly designed to resolve the question of whether a murder conviction—not a special circumstance—is sufficiently supported"].)

## DISPOSITION

The order denying appellant's section 1170.95 petition is reversed.  The matter is remanded to the trial court with directions to issue an order to show cause and proceed consistent with section 1170.95, subdivision (d).

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MICON, J. *


MANELLA, P. J.


CURREY, J.


*Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.